IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONNA J. EVRARD,                          )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )        Case No.: 3:06-cv-428-DRH
                                          )
COMMISSIONER OF SOCIAL                    )
SECURITY,                                 )
                                          )
            Defendant.                    )

## REPORT AND RECOMMENDATION

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of

Civil Procedure 72(b), and ILSD-LR 72.1(a) for a Report and Recommendation on the  Petition

for Revocation of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief")

filed by the Plaintiff, Donna Evrard, on June 9, 2006 (Doc. 10).  For the reasons set forth below,

it is **RECOMMENDED** that Plaintiff's petition be **GRANTED**, that the case be **REVERSED**

under Sentence 4 of 42 U.S.C. § 405(g), that this action be **REMANDED** with instructions to

award Plaintiff benefits based upon a disability commencing January 1, 2004**,** and that the Court

adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

**Procedural History**

On August 30, 2004, Plaintiff filed an application for Disability Insurance Benefits

claiming she was unable to work due to cluster headaches, alleging an onset date of January 1,

2004 (Tr. 14).  Her claim was denied initially on December 15, 2004, and again upon

reconsideration on February 7, 2005 (Tr 24, 30).  Following her request for a hearing, Plaintiff

was granted a hearing before Administrative Law Judge George A. Mills III ("the ALJ"), which was held via video teleconference on November 10, 2005.  Plaintiff was insured for disability benefits through the date of the hearing.  On January 9, 2006, the ALJ issued an opinion denying benefits because he found that Plaintiff was not disabled as defined by the Social Security Act.  Plaintiff appealed this decision to the Appeals Counsel, but was denied on or about April 7, 2006 (Tr. 3-6).  Plaintiff now seeks judicial review of the Agency's final decision pursuant to 42 U.S.C. § 405(g).

**Substantive History**

Plaintiff was fifty-eight years old at the time of the ALJ's decision (Tr. 201-03).  She is a high school graduate with past relevant work experience that includes working as a manger and clerk with the Village of Pittsburgh (Tr. 207).  This work involved supervising five employees, collecting utility bills, bookkeeping, and reporting payroll (Tr. 208).

Plaintiff began visiting Dr. Marvin Rosecan and Dr. Jack Keller in 1980 to receive treatment for headaches (Tr. 72-73, 88).  The earliest treatment notes in the record from Dr. Rosecan are dated November 4, 2003, and indicate that, following numerous medical tests, Dr. Rosecan diagnosed Plaintiff with "recurrent cluster headaches," "basic obstructive pulmonary disease with recurrent asthmatic bronchitis," and "chronic fatigue syndrome with some reactive depression" (Tr. 156).  During this visit with Dr. Rosecan, Plaintiff discussed her past treatment history and reported that she had a long history of cluster headaches accompanied by nausea and vomiting dating back to childhood (Tr. 155, 161).  She also reported that she had visited the Diamond Headache Clinic in Chicago in 1987, where she received a course of intravenous desensitization with histamine over a couple weeks period, gaining only temporary relief (Tr.

2

155).  Plaintiff reported to Dr. Rosecan that in 1994 she also sought treatment for her headaches in Houston, Texas, where she was given an examination and treatment with Lithium, Imitrex,[1] and other medications, but that this only provided temporary relief as well (Tr. 155).

Dr. Rosecan noted that Plaintiff was taking the prescriptions Imitrex and Cafergot[2] suppositories daily for the treatment of her headaches, and that she occasionally used Lithium when her headaches were more severe (Tr. 155).  Dr. Rosecan also noted that Plaintiff had assumed greater responsibilities at work in July 2003, and that this stress made her headaches more severe and frequent (Tr. 155).

The first treatment note from Dr. Jack Keller is dated May 2, 2003 (Tr. 177).  At this visit, Plaintiff reported that her headaches were "about the same" and that the condition "wakes [her] up a lot" (Tr. 177).  Dr. Keller's assessed Plaintiff as suffering from "migraine headaches" and "weakness." (Tr. 178).  His treatment plan included prescribing Topamax,[3] Fiorinal,[4] and two other medications[5] (Tr. 178).

---

[1]Imitrex is a medication indicated for the acute treatment of migraine attacks in adults. Thompson PDR, Physicians' Desk Reference 1441 (60th ed. 2006).

[2]Cafergot is a medication indicated as therapy to abort or prevent vascular headache, migraine, or migraine variants. http://www.fda.gov/medwatch/SAFETY/2002/cafergot_PI.pdf.

[3]Topamax is a medication indicated as adjunctive therapy for adults and pediatric patients ages 2-16 years with partial onset seizures, or primary generalized tonic-clonic seizures. www.fda.gov/medwatch/SAFETY/2003/03APR_PI/Topamax_PI.pdf.

[4]Fiorinal (butalbital, aspirin, and caffeine) is a medication indicated for the relief of the symptom complex of tension (or muscle contraction) headache. http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?id=1262

[5]These other medications noted in the record are illegible (Tr. 178).

In July 2003, Plaintiff visited Dr. Keller again for her headaches and reported that her headaches were "somewhat better, but still there." (Tr. 174).  Dr. Keller noted that she had no side effects with Topamax, and Dr. Keller gave prescriptions for refills of her medications (Tr. 175).

Plaintiff worked full time from 1974 until July of 2003 as a manger and clerk for the Village of Pittsburg (Tr. 203, 208).  Plaintiff continued to work part time from July 2003 to her last day of actual work, on December 22, 2003 (Tr. 68).  The record indicates that after November 9, 2003, Plaintiff worked a total of seven days, and used sick leave, vacation time, and other leave to remain employed through February 6, 2004, despite her last day present at work appears to have been December 22, 2003 (Tr. 68).

In December 2003, Dr. Keller saw Plaintiff again, noting that she complained of cluster headaches (Tr. 171).  Treatment notes from this visit indicate that her headaches were "bad recently"and the headaches were accompanied by "lots of nausea / vomiting." (Tr. 171).  Dr. Keller noted that she had signs of anxiousness, stress, and that her mood was depressed (Tr. 171-72).  Dr. Keller prescribed three medications following this visit, which included Imitrex, Elavil,[6] and Fiorinal (Tr. 173).

On February 6, 2004, Plaintiff sought treatment at the Heartland Regional Medical Center Emergency Room for a cluster headache (Tr. 161).  The Emergency Room doctor diagnosed her symptoms as a cluster headache and prescribed medication (Tr. 162).

––––––––––––––––––

[6]Elavil is a medication prescribed for the relief of symptoms of depression. Endogenous depression is more likely to be alleviated than are other depressive states. www.fda.gov/cder/foi/label/2001/12704s45lbl.pdf

On February 9, 2004, Plaintiff saw Dr. Keller and complained that the medication given to her at the emergency room a few days earlier was not working and that her headaches seemed to worsen after going to work (Tr. 168). Dr. Keller ordered some tests, and changed Plaintiff's dosage of medication (Tr. 169).

Plaintiff visited Dr. Keller again on March 29, 2004, and reported that her headaches had improved, but were not gone, just farther apart and less severe (Tr. 164). Dr. Keller noted that Plaintiff still experienced nausea and he diagnosed her with migraine and cluster headaches (Tr. 164-65).

On June 16, 2004, Dr. Keller again saw Plaintiff, who reporting that her headaches and amount of sleep were slightly better (Tr. 189). She was treated for a urinary tract infection and was instructed to continue on with the same doses of medication for treatment of her headaches (Tr. 190).

On November 22, 2004, Dr. Vittal Chapa saw Plaintiff for an agency examination and evaluation (Tr. 180). Dr. Chapa noted that Plaintiff's reported her medical history and that it was reliable (Tr. 180). The examination revealed mostly normal findings, including that Plaintiff had a "good hand grip bilaterally" and could "perform both fine and gross manipulations with both hands." (Tr. 180-82). Dr. Chapa's diagnostic impression was that Plaintiff suffered from cluster headaches with associated nausea (Tr. 182). Dr. Chapa did not comment on whether Plaintiff had work restrictions.

December 7, 2004, Dr. Oh B. Rock issued a report on behalf of the agency (Tr. 132-39). Dr. Rock confirmed the diagnosis of cluster headaches and, with regard to environmental limitations, opined that she should avoid concentrated exposure to hazards such as "machinery,

heights, etc."(Tr. 136, 139).  He determined that these restrictions were necessary due to pain caused by the headaches, but noted that Plaintiff "does not have any functional losses except pain" (Tr. 139).

The final treatment note in the record is from Dr. Keller and is dated December 14, 2004 (Tr. 185).  During that visit, Plaintiff reported that her headaches were "better than has been" because instead of suffering from headaches four times a day, she was only having headaches four times a week (Tr. 185).  Plaintiff also stated that she was "sleeping good." (Tr. 185).  Dr. Keller refilled Plaintiff's prescriptions to manage the pain associated with the cluster headaches (Tr. 186).

### CONCLUSIONS OF LAW

**Standard of Review**

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive. . ."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001); See also White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) ("the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" (citation and quotation marks omitted)).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401, (1972) (quoting Consolidated Edison Co. v. NLRB,

305 U.S. 197, 229 (1938)).  <u>Sims v. Barnhart</u>, 309 F.3d 424, 428 (7th Cir. 2002); <u>Green</u>

<u>v.Shalala</u>, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ's decision must be affirmed if the findings

are supported by substantial evidence and if there have been no errors of law. <u>Golembiewski</u>, 32

F.3d at 915; <u>Cannon v. Apfel</u>, 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot

stand if it lacks evidentiary support or an adequate discussion of the issues." <u>Lopez ex. rel.</u>

<u>Lopez v. Barnhart</u>, 336 F.3d 535, 539 (7th Cir. 2003).

      Disability insurance benefits are available only to those individuals who can establish a

"disability" under the terms of the Social Security Act.  The claimant must show that she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A).

      The Social Security regulations enumerate the five-step sequential evaluation to be

followed when determining whether a claimant has met the burden of establishing a disability.

20 C.F.R. § 416.920.  The ALJ first considers whether the claimant is presently employed or

"engaged in substantial gainful activity." 20 § C.F.R. 416.920(b).  If she is, the claimant is not

disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the

claimant has a severe impairment or combination of impairments which "significantly limits. . .

physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  Third, the ALJ

determines whether that severe impairment meets any of the impairments listed in the

regulations. 20 C.F.R. § 416.920(d).  If it does, then the impairment is acknowledged by the

Commissioner to be conclusively disabling. <u>Id</u>.  However, if the impairment does not so limit the

claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of his past work. 20 C.F.R. § 416.920(e).  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. § 416.920(f).  However, if the claimant shows that her impairment is so severe that she is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §416.920(g).

**The ALJ's decision**

In his decision, the ALJ determined that Plaintiff satisfied the first two steps in determining whether Plaintiff is disabled within the meaning of the Social Security Act; that is, the ALJ found: (1) Plaintiff did not engage in a substantial gainful activity since the alleged onset of disability, and (2) Plaintiff's cluster migraine headaches and mild emphysema impairments are considered "severe" based on the applicable regulations (Tr. 15-16).  However, because the ALJ found under step three that these impairments did not meet or medically equal one of the listed impairments in the regulations, he considered step four.  Under step four the ALJ determined that Plaintiff was able to perform her past relevant work (Tr. 19).  The ALJ found that the Plaintiff's allegations regarding her limitations were "not completely credible" and decided the Plaintiff was not disabled at any time through the date of the decision as defined in the Social Security Act  (Tr. 19).

**The ALJ's Credibility Determination**

Plaintiff alleges that the ALJ's credibility determination, in which he found Plaintiff to be "not completely credible," was patently wrong because it was not supported by substantial evidence in that the ALJ gave multiple statements in support of his credibility finding that were factually inaccurate, and failed to consider contradictory evidence (Tr. 18).

A reviewing court should afford an ALJ special deference in his credibility determinations because the ALJ is in the best position to see and hear the claimant and assess her forthrightness. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Reversal of an ALJ's credibility determination is warranted only if the claimant can show it was "patently wrong." Id. However, pursuant to SSR 96-7p, the ALJ must give specific reasons for his credibility finding and cannot merely make a conclusory statement that the claimant's allegations have been considered and they are or are not credible. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir 2001). Thus, the ALJ's credibility determination will be affirmed "as long as the ALJ gives specific reasons that are supported by the record for his finding." Skarbek v. Barnhart, 390 F.3d 500, 505 (7th Cir. 2004). But we must not affirm an ALJ's decision that "is unreliable because of serious mistakes or omissions." Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996); See also, Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004) (noting that remand is proper when the ALJ "based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness.").

In this case, the ALJ made the following assertions in support of this assessment of Plaintiff's credibility:

[T]he evidence, including the claimant's testimony, statements to her treating doctors, examining doctors, and in the written medical evidence or otherwise, does not support an inability to perform basic work-related activities.

Particularly, the claimant has a long history of headaches with some relief of her symptoms depending on different treatments (Ex. 2F, p. 16). The evidence shows that despite her headaches, the claimant managed to work for many years until she quit in 2003 because of added responsibilities at work because of the illness of another employee, which reportedly increased the severity and frequency of her headaches (Id.). However, the medical evidence does not support the claimant's testimony but rather suggests that the claimant's headaches got better in July 2003. (Ex. 4F, p. 11). In fact, she was seen only (sic) two occasions between July 2003 and January 2004 (Ex. 2F, p. 16 & 4F, p. 9). Dr. Keller indicated that a brain and cervical spine MRI were both okay. (Ex. 4F, p. 8). In March 2004, the claimant reported her headaches were better and less severe (Id. At 1). The claimant was diagnosed with emphysema yet continues to smoke cigarettes daily. The claimant's physical examination was unremarkable (Ex. 5F), and she testified that she could functionally perform activities when her headaches were not present. The claimant was eligible for early retirement in early 2004 (Ex. 3D), which is very close to her alleged onset date. There claimant reported that her hands were shaky on a good day and she was not strong enough to open lids on jars or food packages (Ex. 7E, p. 1), however, the medical evidence suggests otherwise (Ex. 5F, p. 3). The claimant reported that she no longer was able to think or function mentally, which is why she could not work (Ex. 11E, p. 1), however, she testified she has not had any mental health treatment. Consequently, although the claimant's credibility is generally fair, she is not completely credible regarding her allegations of disability.

(Tr. 17-18).

From the Court's review of the ALJ's opinion, the ALJ appeared to read and analyze the record in a selective manner, ignoring evidence that would contradict his general assertions, which were not supported by specific references to the record. The Court also believes the ALJ took some of Plaintiff's testimony out of context. The Court will now address each of the reasons the ALJ gave for discounting Plaintiff's credibility.

The ALJ first states "the medical evidence does not support the claimant's testimony but rather suggests that the claimant's headaches got better in July 2003. (Ex. 4F, p. 11)." (Tr. 17).

The ALJ cites to a medical progress note by Dr. Keller, dated July 1, 2003, in which he recorded that her headaches were "somewhat better but still there." (Tr. 176). The ALJ apparently ignores, however, Dr. Keller's December 29, 2003 progress note, in which he records that Plaintiff's headaches were "bad recently" and that she was experiencing lots of nausea and vomiting (Tr. 171). The December progress note is closer in time to Plaintiff's date of alleged onset of disability, January 1, 2004. It appears that the ALJ selectively chose the July 2003 record to support a finding of disability while ignoring other relevant contradictory evidence.

The ALJ's next states, "In fact, she was seen only (<u>sic</u>) two occasions between July 2003 and January 2004 (Ex. 2F, p. 16 & 4F, p. 9)." (Tr. 17). Presumably the ALJ meant that Plaintiff was only seen by a physician twice between July 2003 and January 2004. If so, it is an inaccurate statement. During this short, five month period, Plaintiff consulted a physician three times. She visited Dr. Keller on July 1, 2003 (Tr. 176), Dr. Rosecan on November 4, 2003 (Tr. 156), and Dr. Keller again on December 29, 2003 (Tr. 171). The Court does not know why ALJ chose this time frame to focus on when making his credibility determination. Two months prior to July 2003, Plaintiff was seen by Dr. Keller on May 2, 2003 (Tr. 177). One month after January 2004, Plaintiff sought treatment at the Heartland Regional Medical Center Emergency Room for a cluster headache on February 6, 2004 (Tr. 161). She also sought treatment on February 9, 2004, when Plaintiff saw Dr. Keller and complained that the medication given to her at the emergency room a few days earlier was not working and that her headaches seemed to worsen after going to work (Tr. 168). Again, it appears to the Court that the ALJ arbitrarily selected evidence to support a finding of non-disability while ignoring other relevant evidence that supports a contrary conclusion. The Court finds no support for the ALJ's finding regarding

11

Plaintiff's credibility in his statement regarding how many times she sought treatment between July 2003 and January 2004..

The ALJ next states that "Dr. Keller indicated that a brain and cervical spine MRI were both okay." (Tr. 17).  There is no evidence in the record that Plaintiff's MRI's would have revealed any unusual findings on the MRI because of her headaches.  This statement appears to be irrelevant to a credibility determination, and the ALJ as provided no insight as to why it would be relevant.

Also stated in support by the ALJ was the fact that Plaintiff reported her headaches were better, farther apart, and less severe in March 2004, citing Dr. Keller's March 21, 2004 progress note.  Dr. Keller's note reads "[Headaches] better not gone - farther apart - less severe." (Tr. 164).  Dr. Keller also circled the symptoms "headaches" and "nausea." (Tr. 164).  The ALJ does not explain why a decrease in severity of headaches after Plaintiff terminated her employment, which she alleges exacerbated her headache frequency and severity, would mean she was less credible.  If anything, this statement by the ALJ seems to support the opposite conclusion.

The ALJ's next reason to discount Plaintiff's credibility was that she "was diagnosed with emphysema yet continues to smoke cigarettes daily." (Tr. 17).  While this statement is true, the Court is puzzled as to why this fact makes Plaintiff any less credible.  Surely, the ALJ is not suggesting that the mere fact that an individual chooses to legally smoke cigarettes means that their veracity is suspect.

Citing to Dr. Chapa's November 22, 2004, examination of Plaintiff on behalf of the Agency, the ALJ states, "The claimant's physical examination was unremarkable (Ex.5f), and she testified that she could functionally perform activities when her headaches were not present."

12

(Tr. 17).  This is yet another example of the ALJ selectively choosing from the record to discredit Plaintiff's testimony.  Although it is totally irrelevant that her physical examination was unremarkable considering she did not report having a headache during the examination, Dr. Chapa, as a reviewing physician for the agency, did state the following summary and conclusion:

> The claimant is a 57-year-old female.  She has a history of cluster headaches . . . .
> she has associated nausea with the headaches.  Sometimes she is unable to sleep
> at night because of the headaches.  She may have four or five headaches in 24
> hours.  They may last up to two hours.  She uses oxygen and also medications for
> the headaches.  The headaches are always left-sided.

(Tr. 182).  Dr. Chapa also stated that Plaintiff's history was obtained and it was reliable (Tr. 180).  Although the ALJ did not provide a citation to the record for his claim that Plaintiff testified that she could functionally perform activities when her headaches were not present, this fact wouldn't bring into question Plaintiff's credibility.  Given that the agency's own reviewing physician concluded that Plaintiff has cluster headaches that may occur four or five times a day and last up to two hours, whether Plaintiff can function normally during times when she is not having a headache is not the issue.  This fact simply does not support the ALJ's credibility determination.

Next the ALJ states, "The claimant was eligible for early retirement in early 2004 (Ex. 3d), which is very close to her alleged onset date."  The ALJ cites to a letter dated July 15, 2004, which informs Plaintiff of her eligibility to receive a retirement benefit (Tr. 56).  Plaintiff's onset date was January 1, 2004.  The ALJ failed to articulate any reason whatsoever for how these facts support his credibility determination, and the Court will not invent one for him.  Plaintiff categorically denied that she ceased working because of retirement, but rather because of her disabling headaches (Tr. 206-07).  What's more, she alleges that she was unable to return to

13

work full time as of July 2003, a year before she was eligible to draw from her pension (Tr. 203, 206).  Plaintiff's eligibility for retirement and her alleged onset date, standing alone, do not support a finding that Plaintiff is not totally credible.

According to the ALJ, Plaintiff "reported that her hands were shaky on a good day and she was not strong enough to open lids on jars or food packages (Ex. 7E, p. 1), however, the medical evidence suggests otherwise (Ex. 5F, p. 3)." (Tr. 17-18).  The ALJ's first citation is to a questionnaire Plaintiff completed on September 30, 2004, in regards to her application for benefits (Tr. 101).  Plaintiff was asked to describe any problems she had with a list of activities (Tr. 101).  Her response to "b.  Opening twist lids on jars or food packages" was, "No. Not strong enough any more." (Tr. 101).  Her response to "c.  Turning pages of a newspaper or book or sorting and filing papers" was, "On a good day.  My hands are shaky." She also stated, "I can cook and feed myself most of the time.  When headaches are occurring, I'm lucky to stand." (Tr. 101).  The ALJ's second citation was  to the report of the agency's reviewing physician, Dr. Chapa (Tr.182).  The ALJ's citation is to a page where Dr. Chapa states that, at the time of the examination, Plaintiff had good hand grip bilaterally, and could perform both fine and gross manipulations with both hands (Tr. 182).

The ALJ has not demonstrated any inconsistency with Plaintiff's testimony.  Dr. Chapa's report did not state whether Plaintiff's hands were shaky or not, and it is quite possible that a person with "good hand grip bilaterally" would still have difficulty opening the lids on jars or food packages.  Further, it is not clear whether Plaintiff's response in the questionnaire was given in the context of when a cluster headache was occurring.  If it was, it would clearly be consistent with Dr. Chapa's report.

14

The final reason the ALJ cites for discounting Plaintiff's credibility stems from the fact that that on February 15, 2005, Plaintiff reported on a Disability Report Appeal form that "My mental state worsens each day I don't have the ability to think or function mentally." (Tr. 120). Plaintiff alleges that her statement on the report reflects the fact that it was hard to function with her headaches and the medication side effects as she zonked out at times and that her capacity to think as fast as she should was impaired (Doc. 10 at 4; Tr. 211).  The ALJ, on the other hand, found that because Plaintiff testified that she has not had any mental health treatment, she lacks credibility (Tr. 18).  Plaintiff responds that she never alleged a true mental health impairment and, therefore, would not be expected to get mental health treatment for symptoms that occurred as a result of the headaches and medications.

Plaintiff spoke with her physicians on numerous occasions about her troubles with side effects (Tr. 89, 126, 161, 164, 171).  It is unclear from the record whether Plaintiff's nausea and vomiting were a side effect of the medication or headaches.  However, the ALJ's single line summation of Plaintiff's mental functioning abilities fails to reflect whether Plaintiff's side effects of medication were even considered.  Courts have held that the side effects of medication can significantly affect an individual's ability to work and therefore should figure into the disability determination process. See, e.g., Porch v. Chater, 115 F.3d 567 (8th Cir. 1997); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 585 (9th Cir. 1988); Flores v. Massanari, 2001 WL 1092796 (7th Cir. 2001) (unpublished); Flores v. Barnhart, 2002 WL 1461630 (N.D. Il. 2002) (unpublished).  Here, the ALJ's final reason for discounting Plaintiff's credibility must fail as he failed to consider in his opinion the effect of Plaintiff's side effects, which tend to corroborate her statements made regarding her abilities to function mentally.

15

While a reviewing court should afford an ALJ special deference in his credibility determinations because the ALJ is in the best position to see and hear the claimant and assess his forthrightness, Powers, 207 F.3d at 435, we must not affirm an ALJ's decision that "is unreliable because of serious mistakes or omissions." Sarchet, 78 F.3d at 308; Carradine, 360 F.3d at 754. Further, an ALJ may not simply select and discuss only that evidence which favors his ultimate conclusion. See Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994).

In this case, the ALJ appears to not only have selectively chosen evidence to support a finding that Plaintiff was not disabled, but the ALJ failed to provide even negligible evidence to support his finding regarding Plaintiff's credibility.  The ALJ erred by reading and analyzing the record in a selective manner, ignoring evidence that contradicted his assertions, and failing to adequately explain his reasoning for discounting Plaintiff's credibility regarding her limitations. See Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000).  Although the ALJ need not discuss every piece of evidence, he must discuss significant evidence that conflicts with his decision. Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004); Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996).  There were serious mistakes made by the ALJ, as articulated above, and he ignored significant evidence that supported a finding of a disability.  Reversal of an ALJ's credibility determination is warranted if the claimant can show it was "patently wrong."Powers, 207 F.3d at 435.  Here, Plaintiff has met that burden and demonstrated that the ALJ's decision cannot stand as it is not supported by substantial evidence, and therefore was patently wrong.

**Determination of Benefits**

The Court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

In this case, the Court believes that reversal is warranted.  The ALJ based his decision on an erroneous credibility determination in finding, at step four, that Plaintiff was able to return to her past relevant work.

This decision by the ALJ was based on the testimony of the VE, Thomas Mehaffey.  The VE first testified that Plaintiff's past relevant work was classified as primarily sedentary in its physical demand, and was skilled work (Tr. 224).  He then testified that there were transferrable skills to other occupations like a billing clerk, payroll clerk, bookkeeping clerk, receptionist or information clerk (Tr. 224).

The ALJ then posed hypothetical questions to the VE involving two scenarios.  First, the ALJ asked the VE to assume that he found Plaintiff had no physical limitations, and only non-exertional limitations of "no climbing of ladders, ropes or scaffolds, and the precautions that would normally be imposed or a similar [INAUDIBLE] precaution, no working around or avoiding concentrated exposure to work around moving machinery and unprotected heights." (Tr. 225).  The ALJ also asked the ALJ to assume a moderate limitation to exposure to fumes, dust odors, and gasses (Tr. 225-26).  The ALJ then asked whether Plaintiff would be able to do her past relevant work, and also work the VE identified could be done with her transferrable skills (Tr. 226).  The ALJ responded affirmatively.

Second, the ALJ asked the VE to assume that Plaintiff was completely credible, and that her pain and medications caused her level of concentration, persistence, and pace to be at least marked (Tr. 227).  When the VE was asked, given these assumptions, whether Plaintiff would be

able to do her past relevant work or any job in the economy, the VE responded that she would not (Tr. 227).

Given this testimony and the ALJ's erroneous credibility determination, the Court is convinced that the evidence supports only a finding that Plaintiff is disabled. Accordingly, it is **RECOMMENDED** that the Petition be **GRANTED**, and that the decision of the ALJ be **REVERSED and REMANDED** with instructions to award Plaintiff benefits based upon a disability commencing January 1, 2004.

### CONCLUSION

For the above reasons, it is **RECOMMENDED** that Plaintiff's petition be **GRANTED**, that the case be **REVERSED** under Sentence 4 of 42 U.S.C. § 405(g), that this action be **REMANDED** with instructions to award Plaintiff benefits based upon a disability commencing January 1, 2004**,** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1, the parties shall have ten (10) days after issuance of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 24, 2007**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**