IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONNA J. EVRARD,

Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.                                        No. 06-CV-0428-DRH

MEMORANDUM and ORDER

HERNDON, District Judge:

I.  INTRODUCTION

Now before the Court is a Report and Recommendation ("the Report") submitted by Magistrate Judge Donald J. Wilkerson (Doc. 12).   The Report recommends that the Plaintiff's petition be granted, that the case be reversed and that the action be remanded with instructions to award Plaintiff benefits based upon a disability commencing January 1, 2004.   The Commissioner filed a timely objection to the Report. (Doc. 13.)  Therefore, this Court undertakes de novo review of the Report.  **28 U.S.C. § 636(b)(1)(B)**; **FED. R. CIV. P. 72(b)**; ***Govas v. Chalmers, 965 F.2d 298, 301 (7th Cir. 1992)***.  The Court may "accept, reject or modify the recommended decision." **FED. R. CIV. P. 72(b)**; ***Willis v. Caterpillar Inc., 199 F.3d 902, 904 (7th Cir. 1999)***.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to

which specific objection has been made.  *Id*. The Commissioner filed objections to the Report (Doc. 29).  Based on the following, the Court adopts in part and modifies in part the Report.  The Court adopts the Report's finding that the Administrative Law Judge ("ALJ") erred in denying Plaintiff's application for disability insurance benefits and, therefore, the Court reverses the ALJ's decision.  However, rather than awarding Plaintiff benefits as the Report recommends, the Court remands this case for further review and instructs the ALJ to adopt all other findings of fact and conclusions of law contained herein.

## II. <u>BACKGROUND</u>

### A. Procedural History

On August 30, 2004, Plaintiff Donna Evrard ("Plaintiff") filed an application for Disability Insurance Benefits under the Social Security Act alleging that she had been disabled since January 1, 2004 due to cluster headaches.  This claim was initially denied on December 15, 2004 (Tr. 24) and denied again after reconsideration (Tr. 30).  Plaintiff requested a hearing; on November 10, 2005, Administrative Law Judge George A. Mills III ("ALJ") held a hearing.  On January 9, 2006 issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 14-20.)  Thereafter, Plaintiff filed a request for review of hearing decision with the Appeals Council. (Tr. 9).  On April 7, 2006, the Appeals Council denied Plaintiff's request, thereby rendering a final Agency decision (Tr. 3-6). On June 9, 2006, Plaintiff timely filed her complaint in this Court seeking judicial review pursuant to **42 U.S.C. § 405(g).** (Doc. 2.)

### B.  Medical History

At the time of the ALJ's decision, Plaintiff was 58 years old (Tr. 201). Plaintiff graduated from high school.  Plaintiff worked full time from 1974 until July 2003 as an office manager and clerk for the Village of Pittsburgh. (Tr. 203, 208.) Plaintiff worked part-time for the Village from July 2003 until December 22, 2003, (Tr. 68.)  Plaintiff used sick leave, vacation time, and other leave to remain employed through February 6, 2004. (Tr. 68.)

In 1980, Plaintiff began visiting Dr. Marvin Rosecan and Dr. Jack Keller for headaches. (Tr. 72-73, 88.)  The earliest treatment notes from Dr. Rosecan are dated November 4, 2003.  Dr. Rosecan's notes indicate that Plaintiff reported a "long history of headaches going back to childhood." (Tr. 155.)  The headaches had been previously diagnosed as "cluster" headaches.  The headaches are often accompanied by nausea and vomiting.  Plaintiff also reported that she had sought consultation and treatment for the headaches in the past.  She reported that she had visited the Diamond Headache Clinic in Chicago in 1987 and received a course of intravenous desensitization with histamine over a couple weeks period, which resulted in a period of improvement. (Tr. 155.)  Plaintiff further reported that she went to a headache clinic in Houston in 1998.  She was examined and given treatment with lithium, Imitrex and some other medications.  This and other treatment options have given Plaintiff only temporary relief. (Tr. 155.)  At the time of the November 4, 2003 visit, Plaintiff was using Imitrex and Cafergot suppositories for the headaches, which were providing only partial relief.  She reported that she used Lithium occasionally when

the headaches were more severe.  Dr. Rosecan also noted that Plaintiff had taken on greater responsibility at work in July 2003, which had led to an increase in the severity and frequency of the headaches. (Tr. 155.)

Treatment notes from a visit with Dr. Jack Keller on May 2, 2003 indicate that Plaintiff reported that her headaches were about the same and that she wakes up a lot with headaches at night. (Tr. 177.)   She reported that the headaches occurred three to four times a week.  Dr. Keller's treatment plan included prescribing Topomax, Fiorinal, and two other medications. (Tr. 178.)

Plaintiff saw Dr. Keller again on July 1, 2003.  She reported that her headaches were somewhat better but still there.   Dr. Keller refilled Plaintiff's prescriptions and noted that Plaintiff had no side effects with Topomax.  Dr. Keller saw Plaintiff again on December 29, 2003. (Tr. 171.)  Dr. Keller's notes indicate that Plaintiff reported that her headaches were bad recently and were accompanied by lots of nausea/vomiting.  Plaintiff also reported that the headaches were still waking her up at night.  Dr. Keller noted that Plaintiff had signs of anxiousness, stress, and that her mood was depressed.  He prescribed Imitrex, Elavil, and Fiorinal. (Tr. 173.)

On February 6, 2004, Plaintiff sought treatment for a cluster headache at Heartland Regional Medical Center Emergency Room.   (Tr. 161.)   The notes indicate that Plaintiff said that she had had the headache since 3:00 a.m. and that she has had these headaches for 21 years.  She had taken Imitrex, but it had offered no relief and she was out of Cafergot. (Tr. 163.)

Plaintiff visited Dr. Keller again on February 9, 2004.  She reported an

increase in the frequency of headaches and that the Cafergot that she had received at Heartland ER was not working.  Plaintiff reported that the headaches were waking her up and that she had had one just that morning.  Plaintiff reported that the headaches seem to worsen after she goes to work.  She also reported having several headaches a week, that the headaches seem to be of a different nature, and that she would like to go on disability. (Tr. 168.)  Dr. Keller ordered some tests and changed Plaintiff's dosage of medication. (Tr. 169.)

On March 29, 2004, Plaintiff saw Dr. Keller again and reported that while her headaches had improved (farther apart and less severe), they were not gone. (Tr. 164.)  Plaintiff saw Dr. Keller again on June 16, 2004 and reported that her headaches and sleep were slightly better. (Tr. 189.)  She was treated for a urinary tract infection.  There was no change in dosage of medication for treatment of her headaches. (Tr. 190.)

On November 22, 2004, Plaintiff had an agency examination and evaluation with Dr. Vittal Chapa. (Tr. 180.)  Dr. Chapa obtained Plaintiff's medical history and noted that it was reliable.  Dr. Chapa's diagnostic impression was that Plaintiff suffered from cluster headaches. (Tr. 182.) Dr. Chapa's summary noted that Plaintiff has a "history of cluster headaches." "associated nausea," that she notes that sometimes "she is unable to sleep at night because of the headaches," and that she may have four or five headaches each lasting up to two hours in 24 hours. (Tr. 182.)

On December 7, 2004, Dr. Oh B. Rock submitted a report on behalf of the agency. (Tr. 132-139.)  Dr. Rock's brief comments consisted of the following:

"The claimant alleges that she has cluster headaches, which is confirmed by the long medical history of this impairment.  We have restricted the claimant to hazards due to her headaches since she does not have any functional losses except pain." (Tr. 139.)

The last treatment note in the record is from a visit with Dr. Keller on December 14, 2004. (Tr. 185.) Plaintiff reported that her headaches were better than they had been, but that she was still having headaches four times a week (just not four times a day).  (Tr. 185.)  Dr. Keller refilled Plaintiff's prescriptions. (Tr. 186.)

## VI.  Standard of Review and Applicable Law

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ... ." **42 U.S.C. § 405(g)**. Thus, the Court reviews the Commissioner of Social Security Administration's decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law. ***Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000)**. Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. ***Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000)**.  In this review of the ALJ's decision, the Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." ***Lopez,* 336 F.3d at 539; *see also Clifford,* 227 F.3d at 869**.  If an ALJ's decision lacks evidentiary support or an adequate discussion of the issues, then it cannot stand. ***Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.**

**2002)**.  And while the ALJ must have built a "logical bridge from the evidence to his conclusion[,]" *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), we will nonetheless "give the opinion a commonsensical reading rather than nitpicking at it," ***Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Johnson v. Apfel,* 189 F.3d 561, 564 (7th Cir. 1999))**.

A claimant is only qualified for disability benefits where she is found to be disabled within the meaning of the Act. **42 U.S.C. § 423(a)(1)(E);** ***Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005)** The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The SSA has interpreted this statute to mean that both the impairment and the inability to engage in "substantial gainful activity" must last for 12 months. **65 Fed.Reg. 42774 (2000)**; ***Barnhart v. Walton,* 535 U.S. 212, 219-20 (2002) (upholding SSA's construction of the term "disability" as requiring an inability to engage in substantial gainful work for 12 months)**.

In determining whether a claimant is disabled, an ALJ must employ a now-familiar five-part test, considering whether: (1) the claimant is not presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the

claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. *Briscoe,* **425 F.3d at 351-52 (citing 20 C.F.R. §§ 404.1520, 416.920)**.  An affirmative answer in steps one, two, or four leads to the next step, while an affirmative answer to either steps three or five requires a finding of disability.  *Id.* **at 352**.  A negative response at any step other than step three ends the inquiry and requires a finding that the claimant is not disabled. *Clifford,* **227 F.3d at 868 (citing** *Zalewski v. Heckler,* **760 F.2d 160, 162 n. 2 (7th Cir. 1985))**.  The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Briscoe,* **425 F.3d at 352**.

## V.  Administrative Decision

After taking the matter under advisement, the ALJ issued a decision unfavorable to Plaintiff on January 9, 2006.  While the ALJ found that Plaintiff had not been gainfully employed since the onset of the disability (Step 1) and her impairment was severe based on the applicable guidelines (Step 2), he found that the impairment did not meet or medically equate with one of the listed impairments in the regulations (Step 3).  Therefore, the ALJ considered whether Plaintiff was able to perform her past relevant work (Step 4) and concluded that "the evidence, including the claimants's testimony, statements to her treating doctors, examining doctors, and in the written medical evidence or otherwise, does not support an inability to perform basic work-related activities." (Tr. 17.) More specifically, the ALJ found that "although the claimant's credibility generally fair, she is not completely

credible regarding her allegations of disability." (Tr. 18.)  Finally, the ALJ determined

that Plaintiff was not under a "disability" as defined in the Social Security Act, at any

time through the date of the decision. (Tr. 19.)

## VII.  <u>Analysis</u>

When assessing credibility, resolution of competing arguments based on

the record is for the ALJ, not this Court.  ***Donahue v. Barnhart,* 279 F.3d 441,**

**444 (7th Cir. 2002)**.   The ALJ's credibility findings are entitled to substantial

deference, ***Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)**, but the ALJ's

determination must be supported by the record evidence and be sufficiently specific

to make clear to the claimant and to any subsequent reviewer the weight given to the

claimant's statements and the reasons for that weight.  ***Lopez v. Barnhart,* 336**

**F.3d 535, 539-40 (7th Cir. 2003)**.  The Court notes that evaluating the credibility

of pain, fatigue and other subjective complaints are fraught with uncertainty.  ***See***

***Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004).**   Nonetheless, the ALJ

must take care to articulate which information he relies upon when making his

determinations and findings.  ***Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.**

**2001) (ALJ must evaluate which allegations are credible and which are not**

**credible);** ***Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (ALJ must**

**sufficiently articulate his assessment of the evidence to allow the court to trace**

**the path of the reasoning);  *Zblewski v. Schweiker,* 732 F.2d 75, 78-79 (7th**

**Cir. 1984) (where ALJ fails to mention rejected evidence, the reviewing court**

**cannot discern if significant evidence was credited or simply ignored)**. The ALJ

may not reject subjective symptoms as not credible in a conclusory manner without providing reasoning for such a rejection. ***Szulyk v. Heckler,* 575 F.Supp. 1266, 1269 (N.D. Ill. 1984)**. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement. For example, under SSR 96-7p, the ALJ must consider: daily activities; the type dosage, effectiveness, and side effects of medication taken by the claimant; treatment other than medication used to alleviate pain; and the reasons the claimant may not seek treatment for the pain. **SSR 96-7p**.[1]   Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. ***Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004)**.

Here, Magistrate Judge Wilkerson found that the ALJ's assessment that Plaintiff's testimony was not entirely credible was not supported by the substantial evidence in that the ALJ gave multiple statements in support of his credibility findings that were factually inaccurate and that the ALJ failed to consider contradictory evidence. (Tr. 18.) In his objections, the Commissioner argues that Magistrate Judge Wilkerson erred in finding that the ALJ's decision was not

---

[1] SSR 96-7p, in its entirety, includes: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

supported by substantial evidence and that Plaintiff is entitled to benefits, due to a

finding that the ALJ's credibility finding was faulty.

First, the Commissioner contends that all of the medical opinion

evidence supports the ALJ's determination that Plaintiff was not disabled.   Based

on the record before the Court, the Court does not agree with the Commissioner.

The agency's reviewing physicians, Drs. Oh and Pardo, confirmed what Plaintiff's

personal physicians had found: that Plaintiff has suffered for many years from cluster

headaches, which are severe and may be accompanied by nausea and vomiting.  In

cases such as this, where the applicant complains of severe pain, the applicant's own

credibility is critical when determining whether the claimant's residual functional

capacity leaves him unable to perform his past relevant work.   The Court

understands, therefore, why Judge Wilkerson's Report focused primarily on the

ALJ's credibility determination.

In evaluating Plaintiff's credibility, the ALJ made the following findings:

[T]he evidence, including the claimant's testimony, statements to her
treating doctors, examining doctors, and in the written medical evidence
or otherwise, does not support an inability to perform basic
work-related activities.

Particularly, the claimant has a long history of headaches with some
relief of her symptoms depending on different treatments (Ex. 2F, p.
16). The evidence shows that despite her headaches, the claimant
managed to work for many years until she quit in 2003 because of
added responsibilities at work because of the illness of another
employee, which reportedly increased the severity and frequency of her
headaches (Id.). However, the medical evidence does not support the
claimant's testimony but rather suggests that the claimant's headaches
got better in July 2003. (Ex. 4F, p. 11). In fact, she was seen only (sic)
two occasions between July 2003 and January 2004 (Ex. 2F, p. 16 &

4F, p. 9). Dr. Keller indicated that a brain and cervical spine MRI were both okay. (Ex. 4F, p. 8). In March 2004, the claimant reported her headaches were better and less severe (Id. at 1). The claimant was diagnosed with emphysema yet continues to smoke cigarettes daily. The claimant's physical examination was unremarkable (Ex. 5F), and she testified that she could functionally perform activities when her headaches were not present. The claimant was eligible for early retirement in early 2004 (Ex. 3D), which is very close to her alleged onset date. There claimant reported that her hands were shaky on a good day and she was not strong enough to open lids on jars or food packages (Ex. 7E, p. 1), however, the medical evidence suggests otherwise (Ex. 5F, p. 3). The claimant reported that she no longer was able to think or function mentally, which is why she could not work (Ex. 11E, p. 1), however, she testified she has not had any mental health treatment. Consequently, although the claimant's credibility is generally fair, she is not completely credible regarding her allegations of disability.

(Tr. 17-18). The Commissioner disagrees with the Reports conclusion that the ALJ's analysis was patently wrong. The Commissioner argues that when the record and decision as a whole are considered that the ALJ did not make factual errors or ignore contrary evidence. Overall, the Commissioner maintains that the ALJ's credibility finding was reasonable. (Doc. 13.)

However, the Court agrees with the Report's findings that the ALJ misstated certain evidence and ignored other evidence to support a determination that Plaintiff was not entirely credible. The most egregious example of this is the ALJ's finding that Plaintiff is not credible because while she said that the frequency and severity of the headaches had gotten worse "the medical evidence does not support the claimant's testimony but rather suggests that the claimant's headaches got better in July 2003." It is true that at a visit in July 2003 that Plaintiff said that her headaches had gotten "somewhat better," but at her November 2003 visit with

Dr. Rosecan, Plaintiff reported that the headaches were more frequent and severe. Again, when Plaintiff saw Dr. Keller in December 2003 she reported that her headaches were "bad recently" and were accompanied by "lots of nausea/vomiting." The headaches were so bad that Plaintiff ended up in the emergency room on February 6, 2004 and then at Dr. Keller's office on February 9, 2004.  Although the ALJ's decision noted these facts, when it came down to making a determination regarding Plaintiff's credibility, the ALJ focuses only on the July 2003 visit when Plaintiff reported that her headaches were better (although he leaves out the qualifier that they were only "somewhat" better).

The Court further agrees with the Report that the ALJ considered certain facts (i.e., that Plaintiff was diagnosed with emphysema yet continues to smoke cigarettes daily or that Plaintiff had stated that her mental state worsens each day that she doesn't have the ability to think or function mentally) that should have been irrelevant to the ALJ's credibility determination.

As the Report notes, the vocational expert testified that if Plaintiff's testimony were considered credible that Plaintiff would not be able to do her past relevant work or any job in the economy. (Tr. 227.)  Clearly, Plaintiff's credibility is a crucial factor in this matter.  Based on the record before it, the Court finds nothing to support the ALJ's finding that the Plaintiff's "allegations regarding her limitations are not completely credible."

That being said, the Court, in deference to the ALJ, will remand this matter and direct the ALJ to make additional findings, in accordance with the

findings adopted herein.

## VII. <u>Conclusion</u>

Accordingly, the Court **ADOPTS** the Report in part and **MODIFIES** the Report in part (Doc. 12). The Court **ADOPTS** the Report's recommendation that the Court **REVERSE** the ALJs decision and **MODIFIES** the Report's recommendation that the matter be remanded with instructions to award Plaintiff benefits. Instead, the Court **REVERSES** this case and **REMANDS** this matter to the Social Security Agency for further review consistent with this Order. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Donna Evrard.

**IT IS SO ORDERED.**

Signed this 27th day of September, 2007.


/s/      DavidRHerndon
United States District Judge